UNITED STATES, Appellee,

v.

Frank E. ZUPANCIC, Jr., Fireman Apprentice, U.S. Navy, Appellant.

No. 46,363.

NMCM 82–5707.

U.S. Court of Military Appeals.

Aug. 20, 1984.

For Appellant: *Richard M. Borchers*, Esq. (on brief); *Randall J. Davis*, Esq., and *Lieutenant Commander William A. DeCicco*, JAGC, USN.

For Appellee: *Commander W. J. Hughes*, JAGC, USN, and *Lieutenant Michael P. Cogswell*, JAGC, USNR (on petition).

*Opinion of the Court*

EVERETT, Chief Judge:

A special court-martial convicted appellant of possessing, introducing, and possessing with intent to distribute, marihuana, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934, respectively. Thereafter, the judge sentenced him to a bad-conduct discharge, confinement for 120 days, forfeiture of $366 pay per month for 5 months, and reduction to the lowest enlisted grade. Notwithstanding a recommendation by the military judge that the discharge and portions of the confinement and forfeitures be suspended, both the convening and supervisory authorities approved the trial results. In turn, the United States Navy-Marine Corps Court of Military Review affirmed the findings and sentence in an unpublished opinion.

This Court then granted review of appellant's contention that the charges and specifications of which he was convicted were multiplicious for findings. 16 M.J. 407 (1983). We agree only as to one of the specifications, but we perceive no effect on the sentence.

I

According to specification 1 of Charge I, Zupancic violated Article 1151, U.S. Navy Regulations, 1973, by wrongfully possessing 672 grams of marihuana on board the USS CORAL SEA on March 3, 1982. Specification 2 alleged that he violated Article 1151 by wrongfully introducing 672 grams of marihuana on board the same vessel on that same day. The single specification of Charge II was based on the third clause of Article 134 of the Uniform Code and asserted that on March 3, 1982, appellant "intentionally and wrongfully" possessed, "with the intent to distribute, 672 grams" of marihuana, in violation of 21 U.S.C. § 841(a)(1).

The specification alleging wrongful possession was included in the allegations of wrongful introduction in specification 2 of Charge I, as well as in the allegations of wrongful possession with intent to distribute in Charge II. Accordingly, the findings of guilty of specification 1 of Charge I cannot stand. *United States v. Hendrickson*, 16 M.J. 62 (C.M.A. 1983); *United States v. Miles*, 15 M.J. 431 (C.M.A. 1983); *United States v. Gonnella*, 14 M.J. 176 (C.M.A. 1982); *United State v. Roman-Luciano*, 13 M.J. 490 (C.M.A. 1982). *See United States v. Doss*, 15 M.J. 409 (C.M.A. 1983); *United States v. Baker*, 14 M.J. 361 (C.M.A. 1983).

Although specification 2 of Charge I and the specification of Charge II have in common the element of wrongful possession, each contains an element not common to the other. The former requires introduction of the drug on board the vessel. The latter, pursuant to 21 U.S.C. § 841(a)(1), requires an intent to distribute. Since neither specification is "fairly embraced" within the other, convictions on both can coexist. *See United States v. Baker, supra* at 368; *see generally United States v. Doss, supra.*

II

In concluding "that no error materially prejudicial to the substantial rights of the appellant was committed," the Court of Military Review cited its own earlier unpublished opinion in *United States v. Davis*, No. 82–3529 (October 29, 1982). In *Davis*, a different panel of that court had this to say about a defense contention of multiplicity for findings:

As to the second assignment of error, the Army Court of Military Review identified part of the problem in footnote 6 of *United States v. Haywood*, 6 M.J. 604 (ACMR 1978):

Trial findings of guilt to multiplicious specifications that were not appropriate for dismissal prior to findings would still not constitute final resolu-

tion of exigencies of proof inasmuch as the convening authority and, in many cases, this Court have fact-finding responsibilities and authority. Accordingly, the trial judge who grants a post-findings motion to dismiss such a specification risks dismissing the only finding that a reviewing authority could have sustained based upon his resolution of the exigencies. In cases reviewed by this Court, a similar risk attaches when a convening authority disapproves findings of guilty of such specifications.

We also believe a similar risk of reversal of findings by the United States Court of Military Appeals pertains if this Court dismisses multiplicious charges. Consequently, multiplicious specifications that are not *unreasonably* multiplicious (*see United States v. Sturdivant*, 13 MJ 323, 330 (CMA 1982)), will not be dismissed by this Court. Of course, at times the United States Court of Military Appeals chooses to dismiss multiplicious findings that are not, apparently, unreasonably multiplicious. *See, e.g., United States v. Roman-Luciano*, 13 MJ 490 (CMA 1982).

Unpublished opinion at 1–2.

We understand the practical concerns expressed in *Davis* and in the Army Court of Military Review's opinion cited therein, *United States v. Haywood, supra*. However, in the course of attempting to enunciate a test for multipliciousness of findings, we have suggested various practical solutions for those problems. For instance, in *United States v. Allen*, 16 M.J. 395, 396 (C.M.A. 1983), we pointed out that nearly 30 years ago this Court approved a practice of the military judge reserving his ruling on a defense motion to dismiss a multiplicious charge until *after* the members had returned findings of guilty on all charges and specifications. In this way, the trial difficulties surrounding exigencies of proof may be ameliorated. *See United States v.*

*Strand*, 6 U.S.C.M.A. 297, 20 C.M.R. 13 (1955).

Furthermore, in *United States v. Doss, supra*, we observed that a military judge may appropriately reexamine a multiplicity issue *after* an accused has pleaded guilty to charges arising out of a single transaction so that, at that point, "some of the 'doubt as to the facts or the law' may thereby have been removed from the case." *Id.* at 412–13. In a footnote to this observation, we indicated:

In that situation if the guilty plea were subsequently set aside it would seem arguable that the Government would be free to proceed again on the charges that had been dismissed. *See United States v. Cook*, 12 M.J. 448 (C.M.A. 1982).

*Id.* n.6. This possibility of resuscitating a charge dismissed for multiplicity obviates one of the problems which caused concern to the Courts of Military Review.

■ Relying on well-established precedent,[1] we stated in *United States v. Baker, supra* at 368:

Assuming both offenses arise out of one transaction, one offense may be a lesser-included offense of another offense in two situations: First, where one offense contains only elements of, but not all the elements of the other offense; second, where one offense contains different elements as a matter of law from the other offense, but these different elements are fairly embraced in the factual allegations of the other offense and established by evidence introduced at trial.

Thus, the premise for dismissing a charge on the basis of multiplicity is that all of its elements are embraced, explicitly or implicitly, within the allegations of a specification charging a greater offense. Consequently, if later during appellate review a reviewing authority concludes that prejudicial error has tainted a finding of guilty as to the greater offense, it will be free to affirm a finding of guilty as to the lesser offense,

---

1. *United States v. Duggan*, 4 U.S.C.M.A. 396, 399–400, 15 C.M.R. 396, 399–400 (1954). *See* *also United States v. Malone*, 4 U.S.C.M.A. 471, 16 C.M.R. 45 (1954).

unless said finding also is tainted by error. On the other hand, if the reviewing authority chooses to order a rehearing as to the greater offense, the trier of fact, after hearing the evidence at the rehearing, can find the accused guilty of either the greater offense or of the lesser offense.[2] *Cf. United States v. Malone*, 4 U.S.C.M.A. 471, 16 C.M.R. 45 (1954); *United States v. Duggan*, 4 U.S.C.M.A. 396, 15 C.M.R. 396 (1954).

■ To avoid possible future misunderstanding, we reiterate what we had hoped was already clear—namely, that a trial judge or reviewing authority who concludes that, under the *Baker* test, two offenses are multiplicious for purposes of findings should set aside the findings of guilty as to the lesser offense. Only in this way can we assure that the results of a trial by court-martial accurately and properly reflect the extent of an accused's misconduct. *See United States v. Doss, supra.*

### III

■ Left finally for our consideration is whether prejudice in appellant's sentence flowed from the judge's failure to dismiss the multiplicious specification alleging wrongful possession. Appellant's civilian defense counsel forcefully contends in this Court that it is speculative to conclude that appellant's sentence was not affected by the multiplication of charges. He points to the military judge's clemency recommendations and logically concludes that the military judge might not have adjudged so harsh a sentence in the first place if the charges had not been unreasonably multiplied.

Admittedly, the military judge here did not express a belief that the simple possession offense was multiplicious with the other two offenses for sentencing purposes. Nevertheless, the other two offenses are far more serious, and the quantity of contraband involved was not small. Under the circumstances, we are satisfied that the

sentence adjudged and approved—which actually was less than the jurisdictional maximum authorized in a trial by special court-martial—was not adversely affected by the entry of a separate finding on the specification of wrongful possession.

### IV

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to specification 1 of Charge I. The finding of guilty thereon is set aside and that specification is dismissed. In all other respects the decision below is affirmed.

FLETCHER, Judge (concurring):

In *United States v. Zubko*, 18 M.J. 378 (C.M.A. 1984), this Court addressed a similar question involving simple possession and distribution of marihuana under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, and paragraph 213*g*, Manual for Courts-Martial, United States, 1969 (Revised edition). In that case, as in the present case, the offenses rose from the same conduct, involved the same amount of drugs, and occurred at the same time and place. Here, however, the offenses are possession of marihuana and introduction of marihuana under Article 92, UCMJ, 10 U.S.C. § 892, and Article 1151, U.S. Navy Regulations, 1973, and possession with intent to distribute under Article 134 and 21 U.S.C. § 841(a)(1).

The decisions of this Court in *United States v. Hendrickson*, 16 M.J. 62 (C.M.A. 1983), and *United States v. Miles*, 15 M.J. 431 (C.M.A. 1983), control the present case. Moreover, there is convincing federal precedent that simple possession under 21 U.S.C. § 844 is a necessarily included offense within the crime of possession with intent to distribute under 21 U.S.C. § 841(a)(1). *See United States v. Garcia-Duarte*, 718 F.2d 42, 47 (2d Cir. 1983); *United States v. Joyce*, 693 F.2d 838, 843 (8th Cir. 1982); *United States v. Moorman*, 660 F.2d 106, 111 (4th Cir. 1981); *United States v. Burns*, 624 F.2d 95, 104

---

**2.** In view of the options available to a reviewing authority, we do not understand the reasons for

the anxiety voiced in the dissent.

(10th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). The fact that the possession offense was alleged under Article 92 and Article 1151, U.S. Navy Regulations, 1973, is not significant. *See generally United States v. Thurman,* 7 M.J. 26 (C.M.A. 1979).

COOK, Senior Judge (concurring in part and dissenting in part):

I

Since, as the record of trial clearly reveals, the possession of marihuana (specification 1, Charge I) occurred at the same time and place and was based on the same underlying facts as both the introduction of marihuana (specification 2, Charge I) and the possession of marihuana with intent to distribute (specification of Charge II), and since some possession of marihuana is implicit in or included within each of these other offenses, I agree with my Brothers' conclusion that specification 1 of Charge I was multiplicious with these other offenses. *United States v. Baker,* 14 M.J. 361, 371 (C.M.A. 1983) (Cook, J., dissenting). *Cf. United States v. Miles,* 15 M.J. 431, 432 (C.M.A. 1983) (Cook, J., dissenting). Accordingly, I concur in dismissal of that specification. It is only as to Part II of the majority opinion that I depart from my Brothers' reasoning.

II

*The Traditional Concept of "Lesser-Included Offenses"*

When my Brothers discussed multipliciousness for findings, at least since *United States v. Baker, supra,* they have, on the one hand, included the traditional notion of "lesser-included offenses." *E.g., United States v. Baker, supra* at 367–68. Therein, if each element of one offense fits either directly or by reasonable implication into some element of another offense, the former offense is seen as merely an aspect of the latter and cannot stand separately. The corollary to this principle is that, where a subsequent reviewing or appellate authority finds some defect in the greater offense which necessitates dismissal of that offense, it sometimes occurs that the elements of a lesser offense are untainted by the defect. In such instances, the lesser offense can emerge from the greater and be sustained in its own right by the reviewing or appellate authority. Article 59(b), Uniform Code of Military Justice, 10 U.S.C. § 859(b). With these well-established principles I am, of course, in total agreement, and it is on this basis that I concur in Part I of the majority opinion.

*"Lesser-Included Offenses" as that Concept is Modified by the Majority*

My Brothers would enlarge upon this traditional concept of "lesser-included offenses" by including offenses which, in their estimation, are "fairly embraced" by the allegations relating to another charge. *E.g., United States v. Baker, supra* at 368; *see United States v. Hollimon,* 16 M.J. 164, 167 (C.M.A. 1983). Ostensibly, this theory is applicable when one offense is, in some sense, hinted at in the allegations of the other offense. And as the majority here for the first time clarifies, these "embraced" offenses can also emerge and be affirmed in their own right, if unaffected by the taint to the "embracing" offense. 18 M.J. 378, 379.

*Authority to Define Crime as Legislative*

This new scheme of rearranging pleadings is fundamentally flawed, because it ignores the obvious fact that the power to define crimes is assigned by the Constitution to the Legislative Branch. *Ex Parte United States,* 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). Thus, for example, if Congress decides that attempted rape and aggravated assault are both crimes, it is not for the accuser, the convening authority, this Court, or anyone else with the ability to tinker with charges to create a new compound offense such as "attempted-rape-perpetrated-by-means-of-an-aggravated-assault," and then to use this "super" offense as a basis for pardoning legislatively declared crime. *But see United*

*States v. Valenzuela*, 16 M.J. 305 (C.M.A. 1983). Surplusage in a specification is only surplusage, even if it happens to suggest the commission of some additional offense.

### Majority's Theories in Practical Application:

### A Walk Through the Mine Field

Observe how my Brothers' concepts have been applied in actual cases. In *United States v. Glover*, 16 M.J. 397 (C.M.A. 1983), the accused was charged, *inter alia*, with rape (Article 120, UCMJ, 10 U.S.C. § 920) and aggravated assault (Article 128, UCMJ, 10 U.S.C. § 928). The rape specification alleged that Glover "did ... [at a certain time and place] rape" the victim. The assault specification alleged that Glover "did ... [at a certain time and place] commit an assault upon ... [the victim], by pointing at her a dangerous weapon likely to produce grievous bodily harm, to wit: a knife." Except for the fact that the time and place were alleged in identical language, no correlation was alleged between the two incidents, though the evidence of record plainly revealed that the aggravated assault was utilized by the accused to effect the victim's submission. For findings purposes, the majority concluded that the pleadings did not meet their criteria so as to be treated as multiplicious, since each of the offenses contained elements not contained in the other, and since the rape specification as pleaded did not fairly embrace aggravated assault.[1] 16 M.J. 398–99. Therefore, they permitted the separate specifications to stand for findings purposes.

*United States v. Jean*, 15 M.J. 433 (C.M.A. 1983), would appear to have received consistent treatment. There, a resisting-apprehension specification (Article 95, UCMJ, 10 U.S.C. § 895) was alleged in the following terms:

In that ... Jean ... did ... resist being lawfully apprehended by Machinists Mate Second Class Leonard E. Conway, ... by kicking at the said Conway.

A second specification, alleging assault (Article 128) was stated in the following terms:

In that ... Jean ... did ... assault Machinists Mate Second Class Leonard E. Conway, ... by kicking at the said Conway.

Because the assault was suggested in the resisting-apprehension specification (principally through use of the word "kicking"), all of the elements of assault were, in the majority's estimation, "embraced in the factual allegations in the specification of resisting apprehension," such that the assault charge could not stand separately. 14 M.J. at 434. *See also* 18 M.J. at 380.

However, a contrary result was reached in *United States v. Hollimon, supra*. Hollimon was convicted of rape (Article 120) and communicating a threat (Article 134, UCMJ, 10 U.S.C. § 934). The rape specification alleged:

In that ... Hollimon ... did, at the 41st Ordnance Company, in Room 206, Building 283, Rhine Ordnance Barracks, Kaiserslautern, FRG, on or about 2300 hours, 10 June 1980, rape ... [the victim].

The threat specification alleged:

In that ... Hollimon ... did, at the 41st Ordnance Company, in Room 206, Building 283, Rhine Ordnance Barracks, Kaiserslautern, FRG, on or about 2300 hours, 10 June 1980, wrongfully communicate to ... [the victim] a threat to kill ... [the victim] or words to that effect.

As is apparent, there is not the slightest reference to or hint of the offense of communicating a threat within the four corners of the allegation of rape. Nonetheless, the majority dismissed the threat specification because "[c]ommunication of the threat was shown by the pleadings *and evidence* to be fairly embraced as an integral means of accomplishing the rape." 16 M.J. at 167 (emphasis added). Accordingly, despite the assertions to the contrary in *Glover* and the instant case, the fact that certain offenses are neither "included in" nor "fairly embraced" in other offenses does

---

1. However, for purposes of sentencing, my Brothers pulled a different lever and concluded that the offenses were multiplicious since "the charges flowed from 'a single impulse or intent.'" 16 M.J. 397, 398.

not deter my Brothers from dismissing specifications.

Thus, in *United States v. Valenzuela, supra*, the accused was convicted of assault with a dangerous weapon (Article 128) and attempted rape (Article 80, UCMJ, 10 U.S.C. § 880). The aggravated-assault specification, upon which Valenzuela was ultimately convicted, alleged:

> In that ... Valenzuela, ... did, at Fort McClellan, Alabama, on or about 24 November 1981, commit an assault upon ... [the victim] with a dangerous weapon, ... to wit: a knife.

The attempted-rape specification alleged:

> In that ... Valenzuela ... did, at Fort McClellan, Alabama, on or about 24 November 1981, attempt to rape ... [the victim].

As is evident, there can be no contention that the aggravated assault was "fairly embraced in the factual allegations of" (14 M.J. at 368) attempted rape—and my Brothers did not so contend. Rather, they produced still another mutant concept, *i.e.*, "part and parcel," reasoning that, "it appears that Charge II and its Specification (assault with a dangerous weapon) are multiplicious for findings with Charge I and its Specification (attempted rape) in that the assault was 'part and parcel' of the attempted rape." *Id.* at 306. *See also United States v. Mosley*, 16 M.J. 205 (C.M.A. 1983). Accordingly, the majority dismissed the aggravated-assault specification. Again, *Valenzuela* stands diametrically opposed to the principle professed in *Glover* and the instant case, namely that it is only the "included" or "embraced" offenses— the offenses which could readily be reinstated as "lesser" offenses—which will be dismissed.

In *United States v. Ward*, 15 M.J. 377 (C.M.A. 1983), the majority dismissed 13 specifications of uttering checks without sufficient funds and with intent to defraud, where each of the dismissed specifications corresponded to a separately charged specification of larceny of the proceeds. As will

be demonstrated below, both sets of these offenses contained elements not contained in the other set, and neither set referred to the other, either directly or by implication. Similarly, in *United States v. Allen*, 16 M.J. 395 (C.M.A. 1983), the accused was convicted of intentionally making bad checks to a commercial airline and larceny of the proceeds (tickets). Again the larceny specifications and the bad-check specifications contained elements not present in each other, and there was no incorporation of either set of offenses within the other. Notwithstanding the lack of their alleged theoretical underpinning, the majority dismissed the bad-check specifications on the ground "that the making of worthless checks was the false pretense by which ... [Allen] wrongfully obtained the airplane tickets." 16 M.J. at 396.

In *United States v. McKinnie*, 15 M.J. 176 (C.M.A. 1983), my Brothers dismissed, *inter alia*, a charge of communicating a threat (Article 134) as being multiplicious with aggravated assault (Article 128), despite the fact that each of the offenses contained elements not present in the other, and there was no reference to communicating a threat in the allegations of aggravated assault. *McKinnie*, then, achieved precisely the opposite result as *Baker*, where communicating a threat and aggravated assault arising out of the same incident were permitted to stand, since neither offense was "included" or "embraced" within the pleadings of the other. 14 M.J. at 368.

How trial practitioners can be expected to proceed in implementing the myriad, fickle rules propounded by this Court [2], in light of my Brothers' failure to follow even their own dictates [3], is beyond me!

### Resurrection of Dismissed, Non-included Offenses

And what of my Brothers' contention, 18 M.J. at 380, that these offenses to be

---

2. *Cf. United States v. Baker*, 14 M.J. 361, 372 (C.M.A. 1983) (Cook, J., dissenting).

3. Of course I do not retreat from the conclusion I reached in *United States v. Baker, supra* at 373, that this Court lacks authority to promulgate sentencing rules.

dismissed (because they are "included," "embraced," "part and parcel," "duplicated," etc.) can be reinstated if the "greater" offense is subsequently stricken? Suppose that in *United States v. Hollimon, supra*, the trial judge had actually dismissed the charge of communicating a threat, as my Brothers would require, and that some reviewing or appellate authority had concluded that there was, for example, insufficient evidence of lack of consent so as to sustain findings of guilty of rape. Where in the language of the rape specification, quoted above, could be found, either explicitly or implicitly, an allegation that Hollimon communicated a threat to the victim? Since there is not the slightest whiff of communicating a threat in rape, how could such a charge be affirmed?

Similarly, in *United States v. Valenzuela, supra*, wherein the language of the attempted-rape specification, quoted above, is to be found language implying allegations that Valenzuela: assaulted the victim "with a certain weapon, means, or force; and ... that the weapon, means, or force was used in a manner likely to produce death or grievous bodily harm"? Para. 207 *c* (1), Manual for Courts-Martial, United States, 1969 (Revised edition). What basis is there then for affirming the dismissed specification?

In *United States v. Ward, supra*, each larceny specification alleged:

In that Private E–1 Abraham Ward, U.S. Army, 385th Signal Company, 67th Signal Battalion, 2d Signal Training Brigade, Fort Gordon, Georgia, did at Fort Gordon, Georgia, an installation under exclusive military control, on or about ... , steal ... dollars, United States Currency, the property of the Army and Air Force Exchange Service.

Where can be derived allegations that Ward: uttered a check payable to a named person or organization; that he did it for the purpose of procuring an article or thing of value; that he did it with intent to defraud; and that, at the time of uttering the check, he knew that there were insufficient funds in the account for payment of the check? Para. 202A, Manual, *supra*.

How then could such a specification, once dismissed, be affirmed?

In *United States v. McKinnie, supra*, it was alleged:

In that STAFF SERGEANT RONALD E. MCKINNIE, United States Air Force, 3757th School Squadron, did, at Sheppard Air Force Base, Texas, on or about 12 February 1982, unlawfully strike ... [the victim] on the face with his fists and on her head with a pistol.

Where therein does one find allegations that McKinnie: communicated threatening language expressing an intent to injure the victim; that the communication was made known to the victim; that the communication was wrongful and without justification or excuse; and that the conduct of the accused was prejudicial to good order and discipline or service discrediting? *See* para. 213*f* (10), Manual, *supra*. What would permit affirming a charge of communicating a threat? To but pose these questions is to answer them.

### Necessity of Retrial Ab Initio

The fact is that the rationale offered by the majority simply does not work in practice. Realistically, these so-called "embraced," "part and parcel," "duplicated," etc., offenses can usually not be reinstated, except by starting over from the beginning—often years after the fact. *See United States v. Cook*, 12 M.J. 448 (C.M.A. 1982). The reason these offenses cannot be derived from the so-called "greater" offense is that many or all of the elements of these "lesser" offenses are not, in fact, "included" within elements of the "greater" offense. And should the Government be able to marshal their evidence on a long-dismissed "lesser" charge, and should they elect to proceed, what is the justice to the accused, who must now attempt to pick up the trail of stale evidence and dispersed witnesses, in order to muster a defense to the charge? Were we to consider such a prospect from the standpoint of an accused's right to a speedy trial, we would no doubt be outraged at such a delay. However, apparently my Brothers accept such delay as but an inescapable consequence of

their multiplicity labyrinth. I see it as merely unnecessary injustice to all.

The solution to this needless agony, as I have repeatedly urged, is to dispense with this notion that the "embraced," "part and parcel," "duplicated," etc., offenses must be dismissed, and to join the rest of the Federal justice world in dismissing only offenses as to which all elements are actually included in some of the elements of another offense. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

### III

Over the past several years, I made my opposition to the path chosen by my Brothers well known. *E.g., United States v. Baker, supra* at 371 (dissenting); *United States v. Lott*, 14 M.J. 489, 490 (C.M.A. 1983) (concurring in part); *United States v. Ward, supra* at 377 (dissenting); *United States v. Doss*, 15 M.J. 409, 414 (C.M.A. 1983) (concurring in the result); *United States v. Miles, supra* at 432 (dissenting); *United States v. Jean, supra* at 434 (dissenting); *United States v. Teeter*, 16 M.J. 68 (C.M.A. 1983); *United States v. DeMeio*, 16 M.J. 157, 158 (C.M.A. 1983) (dissenting); *United States v. Hollimon, supra* at 167 (concurring in part, dissenting in part); *United States v. Bell*, 16 M.J. 204, 205 (C.M.A. 1983) (dissenting); *United States v. Mosley, supra* at 206 (dissenting). But during this entire period, my views seldom, if ever, had any impact on the outcome of a case, in light of the approach adopted by my Brothers. And as I could detect no reasonable prospect of rapprochement in the offing, I saw no point in continuing my futile vigil, except in the most unusual circumstances. Accordingly, in recent months, I have left this field entirely to my Brothers.