UNITED STATES, Appellee,

v.

Private First Class Gary D. BELL,
226–17–9849, United States
Army, Appellant.

ACMR 9200280.

U.S. Army Court of Military Review.

24 Sept. 1993.

**524**

For Appellant: Dan R. Hyatt, Captain Clayton R. Diedrichs, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Richard A. Cefola, JAGC, Major Timothy W. Lucas, JAGC (on brief).

Before De GIULIO, MORGAN, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a military judge sitting as a general court-martial. Contrary to his pleas, he was found guilty of rape and kidnapping, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 (1988) [hereinafter UCMJ].[1] He was sentenced to a dishonorable discharge, confinement for twenty years, total forfeitures, and reduction to Private E1. The convening authority reduced the confinement to fifteen years, but otherwise approved the sentence.

Appellant asserts that the evidence is legally and factually insufficient to support the findings of guilty of rape and kidnapping, that newly discovered evidence warrants a new trial, that the government's failure to disclose material exculpatory evidence violated due process and was plain error, that the military judge erred by shifting the burden to the defense to discover material exculpatory evidence which was in possession of the government but was not disclosed, and trial defense counsel was ineffective. We find the assertions without merit and affirm.

On the evening of 9 November 1991, S, a fifteen-year-old girl, was accompanying her girl friend home from the post exchange (PX) on Schofield Barracks, Hawaii. Appellant, driving a Honda CRX, yelled at them to "come here." S had never seen appellant before that evening. The girls ignored appellant. When S was returning to the PX, alone, appellant followed her in the car, called to her, and asked her where she was going. After she responded "to the PX," he offered and she accepted "a lift." Appellant passed the PX, however, saying he was going to the Shoppette to get something to drink. She agreed to this detour provided she could "get back in five minutes." Appellant passed the Shoppette and exited the installation stating that he was going to Wahiawa to get something to drink. S asked that she be taken back to post. He stopped in a parking lot and asked her questions concerning sex. Her response to him was that it was none of his business. She again asked to be taken back to Schofield Barracks.

He started back, but passed the installation. In response to her repeated request to be returned to Schofield Barracks, appellant indicated that he was going a little ways and that it wouldn't take long. He

---

1. He was also charged with a specification of carnal knowledge which was dismissed as multiplicious with the rape for findings. We believe that carnal knowledge is not multiplicious with rape since it requires proof that the victim had not attained the age of sixteen, an element not required for the offense of rape. *See United States v. Teters,* 37 M.J. 370 (C.M.A. 12 Aug. 1993). We believe this offense can be revived. *See United States v. Zupancic,* 18 M.J. 387, 389 (C.M.A.1984); *United States v. Doss,* 15 M.J. 409, 413 n. 6 (C.M.A.1983). *See also United States v. Williamson,* 19 M.J. 617 (A.C.M.R.1984), *pet. denied,* 21 M.J. 24 (C.M.A.1985).

stopped in a park, turned on music and placed his hand on her knee. She removed his hand and repeatedly asked to be taken back to the PX. He asked if she wanted to do this and she replied no. S tried to leave the car, but he had locked the doors and rolled up the windows. She could not find the door locks because she was not familiar with the car. Appellant climbed on top of her, lifted her shirt, kissed her "all over" and bit her on the neck. She testified that she screamed at him to stop and tried to get him off her. In response to his question of why she had to struggle, she told him that she was "not that type of person." He asked "why did you get in the car then?" He told her he would take her back if she either let him kiss her all over or she sucked his penis. She refused. He pulled her clothes off and had intercourse with her. He gave her a towel to wipe herself. He subsequently returned her to Schofield Barracks.

He stopped at the gate to show his identification card to the military policeman, and the car stalled. She did not attempt to escape because the doors were locked and the windows were up. She stated that she could not find the door lock and was scared.

He let her out at "Popeye's," stating that she may not want her friends to see him. He asked what he should do if they should meet on the street. She told him to "just keep on driving." He unlocked the car doors. She got out of the car and returned to the PX. Friends took her home.

On her way home, she told a friend what had happened and begged him not to tell her dad. Her father had struck her before this incident and was under a court restraining order not to do so again. Later, her boyfriend convinced her to tell her parents, and she subsequently did so. The incident was reported to the military police.

Sometime later, S accompanied her father to the gym where she identified appellant. S's father chased appellant and stabbed him several times. As a result, appellant was hospitalized for eight days.

The day after the stabbing, appellant was visited by a criminal investigator who told him he was suspected of the offenses against S. The investigator decided that he would not interview appellant because he was under medication. He informed appellant that someone would talk to him later.

After his release from the hospital, appellant called the criminal investigator twice to arrange a meeting. At the meeting, appellant was properly advised of his rights and waived them. Initially, he denied any knowledge of the offenses, but almost immediately admitted "picking up" S and having sexual intercourse with her.

The statement indicates that S voluntarily entered the car and S voluntarily went with him. In his statement, appellant indicates that he "forced himself on her" after the first kiss, that she told him she did not want to have sex with him, that he believed he forced her "because he took off her pants and shoes and [she] kept saying take me back to Schofield ...," and that she told him to stop. He stated that he knew it was wrong to force her to take off her clothes. The statement contains the following: "Do you know you were wrong for having intercourse with her against her will? A: It should not have happened like that, but she should have known when she got in the car that guys want a good time, drink, and have sex. Because I talk [sic] to her before she got into the car so she knew what I was looking for, and that was for a good time." He concluded that he begged forgiveness from God and would dedicate his life to him if he survived the stab wounds. He stated it was a relief to tell everything which had been a burden on him.

At the invitation of the agent, appellant made several corrections in his statement. In his corrections, he deleted several words. Most of the corrections were for spacing between words.

At trial, appellant's defense was that S had consented or that he had thought she consented to accompanying him and to sexual intercourse. Evidence was presented that medical examination of S shortly after

the incident disclosed no bruises or lesions in the genital area.

Appellant's girl friend, the owner of the two-passenger Honda CRX, testified that there were no rips, dents, or tears in the vehicle. She testified that there were no "foot tracks on the ceiling."

At the request of appellant's counsel, the military judge viewed the CRX. It was the defense's contention that the interior of CRX was so small that sexual intercourse had to be consensual.

Appellant testified in his own behalf. He maintained that S agreed to go "cruising" with him and that her only concern was returning before her curfew. He testified that he thought S was sixteen or seventeen years old. He claimed that there were several other cars parked in the area where the sexual intercourse occurred. He testified that initially there was consensual kissing. He then rolled over on top of her. He testified that she did not scream, yell, or fight, but hugged and caressed him. He stated that she raised her arms when he asked her if he could take her shirt off. She raised up when he took her pants off. He admitted to sexual intercourse.

During intercourse, he stated that she moaned, caressed him and enjoyed it. After intercourse, he gave her a tissue to wipe herself. Her attitude changed after intercourse, and she became unfriendly toward him. He attributed it to her desire to return before curfew. He stated that "[he] never did anything that she didn't want me to do. I persuaded her ... to make love or whatever. I didn't force her to do anything. It was persuasion...." He admitted doing wrong by having sexual intercourse, however, because she was only fifteen.

It was the defense position that S got into appellant's car willingly to go riding and was not inveigled to do so. As to the rape, the defense contended that there was no force involved, that S consented, and that appellant was mistaken as to her consent. It was emphasized that there was no damage to the interior of the CRX, a very small car, that S had no bruises or scratch-es. The defense pointed to the lack of complaint by S of soreness in the vaginal area and that there were no rips in her delicate underclothing. They maintained she did not kick, yell, scream, or scratch. It was their position that appellant persuaded her to have sex with him. In any event, the defense maintained that appellant mistakenly believed she had consented.

■■■ Appellant asserts that the evidence is legally and factually insufficient to support the findings of guilty. The test for legal sufficiency is whether a reasonable fact finder, viewing the evidence in a light most favorable to the government, could find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having seen or heard the witnesses, we are convinced of appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c); *Turner*, 25 M.J. 324.

■■■ In this case, the offense of kidnapping was prosecuted under the theory that appellant willfully and wrongfully inveigled S into his car and held her against her will. In this regard, the issues before this court was whether S was "inveigled" against her will, or whether she consented to appellant's acts. The Manual for Courts–Martial states, in part:

'Inveigle' means to lure, lead astray, or entice by false representations or other deceitful means. For example, a person who entices another to ride in a car with a false promise to take the person to a certain destination has inveigled the passenger into the car.... 'Held' means to detain. The holding must be more than a momentary or incidental detention.... [I]f before or after ... [a] rape, the victim is involuntarily transported some substantial distance, as from a housing area to a remote area of the base or post, this may be a kidnapping, in addition to ... rape.... 'Against that persons's will' means involuntarily and may be the result of force or false representations.

Manual for Courts–Martial, United States, 1984, Part IV, para. 92c(1), (2), and (3). We find that appellant's acts fit within these definitions.

Considering the evidence in a light most favorable to the government, we find the evidence legally sufficient to support the findings of guilty to kidnapping and rape.

Concerning factual sufficiency of the evidence, appellant's guilt turns upon his credibility and the credibility of S. We find the issue of credibility against appellant. We are convinced beyond a reasonable doubt of appellant's guilt of kidnapping and raping S.

In related assertions, appellant contends that newly discovered evidence warrants a new trial, that the government's failure to disclose exculpatory evidence violated due process and constituted plain error, and that the military judge erred by shifting the burden to the defense to discover material exculpatory evidence which was already in possession of the government. Subsequent to trial, an article appeared in the local newspaper that S, the victim in this case, participated in competition and won her weight class for sparring in Tae Kwon Do. Based on this information, appellant requested a post-trial session conducted pursuant to Article 39(a), UCMJ, [hereinafter Article 39(a) session], and requested that the findings of guilty be set aside, or in the alternative, that the sentence be reduced. This session was before the same military judge who sat as the fact finder at appellant's trial.

At the Article 39(a) session, S testified that she was involved in Tae Kwon Do about a year prior to the hearing. She testified that her father was a "black belt," the highest level in Tae Kwon Do. She worked out two nights a week and practiced with people above her weight class. She is a "green belt" which is the fourth highest of eight levels. She testified that her martial arts training focused mostly on the use of her feet.

She testified that she could not use her training to defend herself against appellant because she was scared and the car interior was so small she did not have room to kick.

Further, she had never used her training as a means of self-defense.

Trial counsel testified that he did not become aware of S's martial arts training until informed by defense counsel after trial. He testified that he did not disclose that S's father was a black belt because that fact was common knowledge. In his interviews with S, she had told him that she worked out with her father. Since he thought it merely meant some form of physical conditioning, he did not pursue it and never considered it as a matter worthy of reporting to the defense.

After hearing all the evidence, the military judge made findings of fact. He stated:

> [B]ased upon the evidence presented today that [S] does have some training in taekwondo [sic]; from her testimony it is evident to me that taekwondo [sic] primarily involves kicking and it's kicking from a standing position with the feet, not from a prone position on the mat; and [t]hat twaekwondo [sic] involves infrequent use of the hands, and she testified that, and I find that taekwondo [sic] does not involve use of bony structures such as the knees or elbows. Now at trial, [S] testified that she had her knees in the accused's chest; she screamed; she told him no; she tried to get out of the car but it was locked; she couldn't find the lock; the windows were up; she asked him to take her back to Schofield; and in general I found at trial, although not asked for specific findings, that [S] was raped because under the totality of the circumstances, she resisted to the best of her ability and she eventually gave up because of the size of the accused and her fear of him; that resistance would have been futile under the circumstances. And she testified today the room in the car was insufficient to give her the chance to develop any power in her kicks. My view of the interior of the car during trial did reveal that it was a small interior.

Addressing the issue of newly discovered evidence, the military judge stated:

[I]t appears that based upon the newspaper article ... and based upon testimony today ... that the competition ... was held on 7 March. Thus it appears that both trial counsel ... and defense counsel ... didn't know of [S's] twaekwondo [sic] training until after trial. Now [defense counsel] ... says the evidence would not have been discovered before trial despite due diligence. Well, as evidenced by my rather simple question today of [S], 'did anybody ever ask you if you had martial arts training?' [sic] She said, 'no.' It seems like to me that's a reasonable question for people to ask in a situation like this of any female that's alleging an attack upon her. It certainly goes to a defense theory of consent or at least mitigation, and thus I find the evidence of her martial arts training could have been easily discovered prior to trial by the defense asking her at the Article 32 whether she'd had martial arts training. It certainly could've been asked of her at trial, and the defense could have been given a continuance to further develop their case had they needed.

The military judge concluded that, under Rule for Courts–Martial 1102(b)(2) [hereinafter R.C.M.], a matter arising after trial would have to substantially affect the legal sufficiency of any finding of guilty or the sentence. He concluded that nothing he heard in the Article 39(a) session changed his mind. He concluded that the accused was convicted by competent evidence beyond a reasonable doubt of the two crimes. He further found that nothing he heard changed his sentence.

■ A new trial may be granted only on the grounds of newly discovered evidence or fraud on the court. R.C.M. 1210(f)(1). Here, appellant asserts the grounds of newly discovered evidence. A new trial may not be granted based on newly discovered evidence unless petitioner shows that it was discovered after trial; would not have been discovered by petitioner at the time of trial with the exercise of due diligence; and, if considered in the light of all other pertinent evidence, would probably produce a substantially more fa-

vorable result for the accused. R.C.M. 1210(f)(2).

In the case before us, the military judge applied these rules. He found that the evidence was discoverable at or before trial with the exercise of due diligence. He further found, that in any event, the evidence concerning S's Tae Kwon Do training and abilities was not substantial in light of all the other evidence and did not affect the findings of guilty or the sentence at all.

■ A military judge's findings of fact should not be disturbed unless they are clearly erroneous. *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985); *United States v. Austin*, 21 M.J. 592, 596 (A.C.M.R.1985). The military judges findings are not clearly erroneous. In addition, exercising our fact finding powers under Article 66(c), UCMJ, we agree with them. We hold appellant is not entitled to a new trial.

■ Further, we agree with the military judge's finding that the government did not know of S's Tae Kwon Do training until after trial. We find no erroneous shifting of the burden to the defense to discover this evidence. Trial counsel did not violate a duty to disclose this evidence. There was no violation of due process in this regard. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Finally, appellant asserts that his counsel was ineffective in failing to discover the victim's martial arts training and in failing to suppress appellant's confession.

■ In order to be successful in an assertion of ineffective assistance of counsel, appellant must show that counsel was deficient and that the deficient performance prejudiced him, that is, counsel's errors were so serious as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). As it relates to the discovery of S's martial arts training, we find, as the military judge found, that counsel

should have discovered this evidence. As previously discussed in this opinion, we conclude that appellant was not prejudiced by the deficiency. He was not deprived of a fair trial. We conclude that the trial result was reliable.

■ Appellant's assertion that his counsel was ineffective is also based upon the contention that counsel failed to discover and develop that appellant was under the influence of a narcotic medication at the time of his statement, failed to develop that his statement was involuntary, and failed to move to suppress that statement. There is no question that failure to move to suppress or object to an admission or confession of an accused constitutes waiver. *See* Mil.R.Evid. 304(d)(2)(A); *United States v. Miller*, 31 M.J. 247, 251 (C.M.A.1990).

■ Here, trial defense counsel did not move to suppress or did not object to the admissibility of appellant's statement. A review of the record indicates the reason. Appellant sought out the investigator after his release from the hospital. In fact, he made two telephone calls to the investigator to ensure that he could meet with him. He was properly advised of his rights and a statement was taken over a period of several hours. He reviewed that statement and made a number of corrections. Most of the corrections were spaces between words in the typed statement. Appellant placed his initials at his corrections on the statement. His purpose for searching out the investigator and making the statement is clear. He had found God while in the hospital, made a promise that if he survived he would dedicate himself to God, and made the statement to clear his conscience. We find, as a matter of fact, that appellant's acts were not those of a person acting involuntarily under the influence of drugs. We also note that statements taken while a person is under the influence of drugs or alcohol can be voluntary. *See Wolfrath v. LaVallee*, 576 F.2d 965 (2d Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978); *United States v. Harden*, 480 F.2d 649 (8th Cir.1973); *see also United States v. Thornton*, 22 M.J. 574 (A.C.M.R.), *pet. denied*, 23 M.J. 179 (C.M.A.1986). Further, the lack of evidence in the record that appellant was under the influence of drugs at the time of the confession is a strong indication that the issue was not significant. Under these circumstances, we find appellant has failed to show a deficiency on the part of trial defense counsel in this respect.

Our findings concerning this issue are consistent with trial defense counsel's affidavit. We find the affidavit credible. We hold that appellant has failed to show that his trial defense counsel was ineffective.

The assertions of error, to include those personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed.

Judge MORGAN and Judge GONZALES concur.