UNITED STATES, Appellee,

v.

Mavis A. ANTONITIS, Sergeant First
Class, U.S. Army, Appellant.

No. 61,132.

CM 8702792.

U.S. Court of Military Appeals.

Sept. 28, 1989.

For Appellant: *Captain Patricia D. White* (argued); *Colonel John T. Edwards, Lieutenant Colonel Russell S. Estey, Captain Brian D. Bailey* (on brief).

For Appellee: *Captain Randy V. Cargill* (argued); *Lieutenant Colonel Gary F. Roberson* (on brief); *Major Daniel J. Dell'Orto* and *Major Gary L. Hausken.*

## Opinion of the Court

COX, Judge:

Appellant was tried by general court-martial composed of officer members. Contrary to her pleas, she was found guilty of wrongfully possessing with intent to distribute, and wrongfully introducing "onto an installation used by the Armed Forces," approximately .25 grams of methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. She was sentenced to a bad-conduct discharge, total forfeitures, and reduction to the grade of Private E–1.

The convening authority approved the sentence. The Court of Military Review affirmed the findings of guilty and "[o]nly so much of the sentence as provides for a bad-conduct discharge, forfeiture of $447.00 pay per month for 9 months, and reduction to the grade of Private E–1." 26 MJ 856, 858 (ACMR 1988). This Court granted review of the following issues:

### I

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO DISMISS SPECIFICATION 1 (POSSESSION WITH INTENT TO DISTRIBUTE) AS MULTIPLICIOUS WITH SPECIFICATION 2 (INTRODUCTION WITH INTENT TO DISTRIBUTE) AND, INSTEAD, ORDERING A MAJOR CHANGE IN SPECIFICATION 2 OVER DEFENSE OBJECTION.

### II

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING CAPTAIN HEANEY TO TESTIFY ABOUT COLLATERAL ADMINISTRATIVE CONSEQUENCES OF A COURT–MARTIAL.

██ At the outset of the trial, appellant moved to dismiss specification 1 of the Charge on the grounds that it was multiplicious with specification 2.[1] The Government opposed the motion and, in the alternative, moved to amend specification 2 "by the crossing out of specification 2 all words starting with 'to wit'...." The military judge denied the motion and allowed the Government to amend the specification by striking "the words, 'with intent to distribute the said controlled substance.'"

In *United States v. Zupancic*, 18 MJ 387 (CMA 1984), Chief Judge Everett, speaking for the Court, held that although allegations of wrongful

introduction and possession with intent to distribute have in common the element of wrongful possession, each contains an element not common to the other. The former requires introduction of the drug on board the ... [installation]. The lat-

---

1. The specifications of which appellant was found guilty were:
 As drafted originally:
 Specification 1: In that Sergeant First Class Mavis A. Antonitis, ... did, at Fort Huachuca, Arizona, on or about 10 April 1987, wrongfully possess about 0.25 grams of methamphetamine, a controlled substance, with intent to distribute the said controlled substance.
 Specification 2: In that Sergeant First Class Mavis A. Antonitis, ... did, at Fort Huachuca, Arizona, on or about 10 April 1987, wrongfully introduce about 0.25 grams of methamphetamine, a controlled substance, onto an instal-

lation used by the Armed Forces or under control of the Armed Forces, to wit: Fort Huachuca, Arizona, with intent to distribute the said controlled substance.
 As amended at trial:
 Specification 2: In that Sergeant First Class Mavis A. Antonitis, ... did, at Fort Huachuca, Arizona, on or about 10 April 1987, wrongfully introduce about 0.25 grams of methamphetamine, a controlled substance, onto an installation used by the Armed Forces or under control of the Armed Forces, to wit: Fort Huachuca, Arizona.

ter ... requires an intent to distribute. Since neither specification is "fairly embraced" within the other, convictions on both can coexist.

*Id.* at 388.

However, the charges in *Zupancic* arose prior to the effective date of Article 112a. Under that Article, either possession or possession with intent to distribute are included within introduction with intent to distribute. Para. 37b(6) and d(6), Part IV, Manual for Courts–Martial, United States, 1984. The true nature of the Government's case must be accurately portrayed. Thus, the amendment of specification 2 was ineffective to avoid consolidation. *See United States v. Sorrell*, 23 MJ 122 n. 1 (CMA 1986).

Issue II arises out of the testimony of Captain Kathleen Heaney, appellant's company commander. Appellant was at the time of trial a Sergeant First Class (E–7) whose position required her to hold a Top Secret security clearance. During the presentencing portion of the trial, Captain Heaney was permitted, over defense objection, to offer her opinion concerning appellant's rehabilitative potential. In particu-lar, Captain Heaney was asked numerous questions concerning the effect of the conviction on appellant's security clearance; whether she could continue her job without the clearance; and whether she could remain in the service at all without a clearance.[2] Trial counsel asserted that the testimony was offered because

> it goes directly to whether or not she should be retained in the Army, and that is an important consideration. The effect on the unit, the effect on the Army, what the likely outcome is.

Appellant now argues that this testimony concerning her security clearance was a collateral, administrative issue which was inappropriately considered on sentencing. The Government contends that Captain Heaney's testimony did not concern a collateral administrative issue and was admissible under either RCM 1001(b)(4) or RCM 1001(b)(5), Manual, *supra*, or both.[3]

■ We first consider the Government's contention that testimony concerning the effect of a conviction on security clearances is admissible under RCM 1001(b)(4). In *United States v. Fitzhugh*, 14 MJ 595, 598 (AFCMR 1982), *pet. denied*, 15 MJ 165

2. The relevant testimony was as follows:
 Q. Captain Heaney, as I was saying before, knowing what you do about the Central Clearance Facility and considering the cases that you've seen that ha[ve] come through your office, that [is] the cases you've dealt [with], do you have any opinion as to the reaction the Central Clearance Facility is going to have to this court-martial conviction for the possession with the intent to distribute, and a wrongful introduction of controlled substance?
 A. Possession with the intent to distribute will probably result in a revocation, meaning that she will not have any security clearance whatsoever, and she'll be a status called unclearable.
 Q. How long does that last?
 A. Forever. Unless she could come up with— it would last forever, that would be my opinion.
 Q. Is there any way she could continue in her current MOS, if she has no security clearance?
 A. No.
 Q. What kind of jobs could a Sergeant First Class with 11 years in service d[o] in the Army, if she has no security clearance?

 A. To be an E–6 in the Army, you have to be clearable to a Secret. She will not be clearable at all, so I don't know how she can remain as an E–7. I don't think she should be in the Army, because she is not clearable or would not be clearable.

3. RCM 1001(b)(4) states:
 *Evidence in aggravation.* The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty. Except in capital cases a written or oral deposition taken in accordance with R.C.M. 702 is admissible in aggravation.
 RCM 1001(b)(5) states:
 *Evidence of rehabilitative potential.* The trial counsel may present, by testimony or oral deposition in accordance with R.C.M. 702(g)(1), evidence, in the form of opinions, concerning the accused's previous performance as a servicemember and potential for rehabilitation, On cross-examination, inquiry is allowable into relevant and specific instances of conduct.

(1983), the Court of Military Review correctly found that, where involvement of a missile crew commander with drugs directly "affect[ed] crew integrity as a missile crew trains together and generally performs alert duty together," such testimony showing the impact of the offense "and its effect on the military mission are circumstances that the court may consider." Clearly, RCM 1001(b)(4) envisions use of evidence showing how serious an offense may be and the consequences to the military mission.

Here, however, the Government's reliance on *Fitzhugh* is misplaced. Our review of the record reveals that this evidence was not offered to demonstrate a relationship between the *offense* and the mission of the military intelligence school or the intelligence community. Rather, it was offered to show that the Army simply had no more use for appellant because she could not be granted a security clearance. The focus of the testimony was to demonstrate that appellant should not be retained in service, rather than to show the impact her criminal conduct had upon the mission. As such, the testimony was not admissible under RCM 1001(b)(4).

■ We likewise reject the Government's argument that whether appellant could retain her security clearance was relevant to her "rehabilitative potential" under RCM 1001(b)(5). In *United States v. Horner*, 22 MJ 294 (CMA 1986), and more recently in *United States v. Ohrt*, 28 MJ 301 (CMA 1989), we "held that 'rehabilitative potential' refers to the accused. It is based upon an 'assessment of ... [the accused's] character and potential.'" *Id.* at 304, *citing* 22 MJ at 296. That some administrative rule or security officer might deny appellant authorization to work with classified materials is not relevant to whether she possessed the requisite character and will to become a responsible member of the military community. Military sentences are not based on their administrative consequences; rather it is the reverse. Sentencing is an individualized task wherein the attention of the court-martial is focused upon the accused and the needs of the military society to maintain good order and discipline. *United States v. Ohrt, supra* at 305–06.

We do not suggest that the circumstances that appellant was entrusted with this high form of security clearance and that she abused that trust and confidence are not matters of due concern for the sentencing authority. Indeed, they may properly be considered in arriving at a just and appropriate sentence. We simply hold that the decision to award a *punitive* discharge should not be influenced by whether a security clearance might be denied.

■ We have analyzed the record to determine if the foregoing errors were harmless. Art. 59(a), UCMJ, 10 USC § 859(a); *United States v. Weeks*, 20 MJ 22 (CMA 1985). Because of appellant's lengthy and otherwise honorable service; the facts and circumstances surrounding her use of amphetamines; and the substantial case offered in extenuation and mitigation in her behalf, we cannot conclude that the two errors committed here did not prejudice her as to sentence.

Specifications 1 and 2 are consolidated into the specification of the Charge by adding, at the end of specification 2 as modified at trial, the words, "with intent to distribute the said controlled substance." The decision of the United States Army Court of Military Review is reversed as to sentence. A rehearing on sentence may be ordered based on the consolidated specification of the Charge.

Chief Judge EVERETT and Judge SULLIVAN concur.