**UNITED STATES, Appellee,**

v.

**Specialist Jerome D. WOOD, 568–15–4110, United States Army, Appellant.**

**ACMR 8802045.**

U.S. Army Court of Military Review.

15 Feb. 1990.

For Appellant: Captain Paula C. Juba, JAGC (argued); Lieutenant Colonel Russell S. Estey, JAGC, (on brief).

For Appellee: Major Gary L. Hausken, JAGC (argued); Lieutenant Colonel Daniel J. Dell'Orto, JAGC, (on brief).

Before DeFORD, KANE, and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, the appellant was convicted by a court-martial composed of officer and enlisted members of possession of hashish with intent to distribute and two specifications of violating a lawful general regulation (importation of hashish and possession of paraphernalia), violations of Articles 92 and 112a of the Uniform Code of

Military Justice, 10 U.S.C. §§ 892 and 912a (1982 & Supp. V 1987) [hereinafter UCMJ]. His approved sentence includes a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

On appeal, the appellant has assigned the following errors:

I

THE MILITARY JUDGE ERRED IN FAILING TO DISMISS SPECIFICATION 1 OF CHARGE I AS BEING MULTIPLICIOUS FOR FINDINGS WITH THE SPECIFICATION OF CHARGE II.

II

THE MILITARY JUDGE ERRONEOUSLY ABANDONED HIS IMPARTIAL ROLE BY REPEATEDLY AIDING THE PROSECUTION AND BY HINDERING PRESENTATION OF APPELLANT'S DEFENSE.

I

■ In military law, two charges are multiplicious for findings:

... if either (a) one of the charges necessarily included all the elements of the other, or (b) the allegations under one of the charges, as drafted, "fairly embraced" all the elements of the other. If neither of these standards is met, then the charges are separate for findings.

*United States v. Holt,* 16 M.J. 393, 394 (C.M.A.1983). *Accord United States v. Doss,* 15 M.J. 409 (C.M.A.1983); *United States v. Baker,* 14 M.J. 361 (C.M.A.1983).

In applying the rule, military courts "need not go beyond the language of the specification on which the case is tried." *United States v. Holt,* 16 M.J. at 394; *United States v. Wood,* 19 M.J. 542 (A.C.M.R.1984).

The specifications in issue are as follows:

In that [the appellant] did at the Elten Autobahn Border Crossing ... on or about 29 April 1988, violate a lawful general regulation, to wit: paragraph 7a, United States Army Europe Regulation 550–175, dated 4 August 1983, by wrongfully importing marijuana in the hashish form into the Federal Republic of Germany. [Specification 1, Charge I].

In that [the appellant] did, on or about 29 April 1988, at the Elten Autobahn Border Crossing ... wrongfully possess 102.98 grams of marijuana in the hashish form ... with the intent to distribute. [Specification of Charge II].

In *United States v. Antonitis,* 29 M.J. 217 (C.M.A.1989), the United States Court of Military Appeals noted that it had previously held in *United States v. Zupancic,* 18 M.J. 387 (1984):

[I]ntroduction and possession with intent to distribute have in common the element of wrongful possession, each contains an element not common to the other. The former requires introduction of the drug.... The latter ... requires an intent to distribute. Since neither specification is "fairly embraced" within the other, conviction on both can exist.

*United States v. Antonitis,* 29 M.J. at 218–219 (quoting *United States v. Zupancic,* 18 M.J. at 388). The *Antonitis* court held, however, that subsequent enactment of Article 112a, UCMJ, altered the effect of the *Zupancic* decision because:

Under that Article [Article 112a], either possession or possession with intent to distribute are included within introduction with intent to distribute.

*United States v. Antonitis,* 29 M.J. at 219 (citing Para. 37b(6) and d(6), Part IV, Manual for Courts–Martial, United States, 1984).

That Court has also determined that specifications alleging importation of a controlled substance into Germany and possession of that same substance are multiplicious. *United States v. Anderson,* 16 M.J. 444 (C.M.A.1983) (summary disposition). Thus, the *Anderson* and *Antonitis* decision, considered together, raise the issue whether enactment of Article 112a, UCMJ, would permit separate convictions for possession with intent to distribute a controlled substance and for importation of that controlled substance as in *Zupancic,*

would make these offenses multiplicious as in *Antonitis*. We hold that the *Zupancic* analysis applies and therefore the specifications in the case at bar are not multiplicious for findings.

Article 112a, UCMJ prohibits only importation "into the customs territory of the United States." 10 U.S.C. § 912a (Supp. V 1987). Thus, an alleged violation of Article 112a, UCMJ, cannot as a matter of law embrace an allegation of wrongful importation of a controlled substance into Germany. If this court were to consolidate these specifications, the usual remedy for multiplicity, we would in effect be legislating an amendment to Article 112a and permitting a conviction under Article 112a for importation into the customs territory of Germany. Thus, the *Zupancic* analysis continues to be valid in the factual context of this case.

## II

Appellant has grounded his second assignment of error on the conduct of the military judge which he contends demonstrated such partiality and prosecutorial fervor as to warrant the conclusion he was denied a fair trial. Specifically, he asserts that the judge's cross-examination of the appellant was more extensive than necessary, induced the trial counsel to ask more questions, and effectively amounted to a judicial comment that the appellant's testimony was incredible. He also complains that the judge interfered with the appellant's presentation of his case by improperly restricting the testimony of an important defense witness, conducting a devastating cross-examination of that witness and unfairly commenting on the witness' credibility. We disagree with appellant in all respects.

One of the most fundamental tenets of military criminal jurisprudence involves the manner and conduct of military judges during proceedings over which they preside. In a recent opinion, the Court of Military Appeals held:

Public confidence in the integrity and impartiality of a judge is sustained in large part by the conduct of a judge during the proceeding. In the military, a judge may not abandon his role as an impartial party and assist in the conviction of a specific accused. He does not, however, lay aside impartiality when he asks questions in the appropriate case to clarify factual uncertainties.

*United States v. Reynolds*, 24 M.J. 261, 264 (C.M.A.1987) (citations omitted).[1]

The foregoing language comports with the Court's earlier expressions of policy which it made applicable to law officers as presiding judicial officers. In *United States v. Bishop*, the Court held:

It is, of course, well-settled that the law officer is not a mere umpire in the contest between the Government and the accused. He can go beyond ruling on the admissibility of disputed items of evidence and ask questions to clear up uncertainties in the evidence or to develop further the facts for the better understanding of the court members. Consequently, the mere asking of questions by the law officer is not error. However, the law officer cannot lay aside impartiality, and become an advocate for one side

---

**1.** Prior to the establishment of the position of military judge by the Military Justice Act of 1968 (Oct. 24, 1968, Pub.L. 90–632, 82 Stat. 1335), law officers were authorized to preside as judicial officers at courts-martial by the Uniform Code of Military Justice of 1950. In one of its earliest decisions, the Court determined that "[t]he legislative background of the Uniform Code makes clear beyond question Congress' conception of the law officer as a judge to all material intents and purposes." *United States v. Berry*, 2 C.M.R. 141 (C.M.A.1952). More recently, the Court opined:

The first Canon of Judicial Conduct requires that judges uphold the independence and in-

tegrity of their courts. ABA Code of Judicial Conduct, Canon I (1972). When, in 1968, Congress changed the title "law officer" to "military judge" ..., it certainly intended that military judges would be subject to this Canon—which is applicable to all other judges throughout the United States. Indeed, for Congress to name someone a "judge" and not intend for him to perform his duties as a "judge" would be to perpetrate a fraud on servicemembers and on the American public. *United States Navy–Marine Corps Court of Military Review v. Carlucci*, 26 M.J. 328, 336 (C.M.A. 1988).

or the other. If he does so, he commits reversible error.

*United States v. Bishop*, 28 C.M.R. 341, 344 (C.M.A.1960).

We may conclude from the Court's pronouncements that trial judges must constantly be aware of the duality of their role as arbiters in the criminal justice system. On the one hand they must insure that the proceedings are efficiently administered to facilitate discovery of the truth about the incident upon which the charges are based; on the other, they must insure this is accomplished with the requisite impartiality to guarantee that the trial was conducted fairly. In another opinion, the Court analogized this dualism to being "on the tightrope over which a trial judge must tread in assuring on the one hand that the jury is provided the information it needs while also scrupulously avoiding even the slightest appearance of partiality." *United States v. Shackleford*, 2 M.J. 17 (C.M.A.1976) (citing *United States v. Clower*, 48 C.M.R. 307, 310 (C.M.A.1974)). We have implemented the foregoing guidance by holding:

> The test for determining whether a military judge has abandoned his role and become a partisan advocate is a subjective one. The totality of circumstances must be considered. Although the military judge cannot lay aside his impartiality and become an advocate for one side or the other, he can, and sometimes must, ask questions to clear up uncertainties in evidence or further develop the facts.

*United States v. Reynolds*, 19 M.J. 529, 533 (A.C.M.R.1984), *aff'd*, 24 M.J. 261 (C.M. A.1987); *accord United States v. Blackburn*, 2 M.J. 929 (A.C.M.R.1976).

■ An examination of the circumstances reflected in the record of trial reveals that the military judge did not act improperly as the appellant alleges. The charges resulted after the appellant was apprehended by German customs authorities as he attempted to drive into West Germany at a border crossing near Nijmegen, the Netherlands. At trial, the customs officials testified that appellant was apprehended during a routine customs inspection because: he appeared extremely nervous; he met a drug smuggler's profile; a drug detection dog alerted to indicate his car contained drugs; a search of his car revealed one hundred and ten grams of hashish hidden behind a panel in the trunk; and he made certain admissions indicating that he knew the hashish had been hidden in the car. Appellant was subsequently turned over to American criminal investigators for interrogation. One of the investigators testified that, after waiving his Article 31, UCMJ, 10 U.S.C. § 831, rights, appellant denied knowing how the hashish got into his automobile. However, he told the investigator that he went to Amsterdam, in the Netherlands, to visit a girlfriend. He also stated that he previously loaned his car to the girlfriend whom he surmised may have placed the hashish in his car. Upon further questioning, he suggested that the German customs officials could have put it there.

After the customs police returned his car to him, appellant discovered that it contained a bag belonging to one Mr. Bangura, a citizen of Sierra Leone who was employed in West Germany. The bag contained Bangura's passport, work permit and other personal items. At trial, appellant defended on the theory that Mr. Bangura placed the hashish in his car. He testified that he met Bangura in Frankfurt three days earlier and, upon his request, gave him a ride to Nijmegen where appellant had arranged to meet his girlfriend for the weekend. The appellant suggested that, while in Nijmegen, Bangura had access to appellant's car for a brief period and had probably placed the hashish in it at that time. Appellant's testimony contained inconsistencies, demonstrated memory lapses and was apparently contrary to the testimony of the prosecution's witnesses as to what he had told German and military officials at the time of his interrogation.

■ Appellant also called Mr. Bangura as a witness intending to query him about his dealings with the appellant. The trial defense counsel explained to the judge that he was "calling Mr. Bangura, because it is the defense theory, obviously, that he is

the individual who planted the drugs in the car ... [and] ... that he admits what occurred ... [or else] ... I am going to impeach him." The judge permitted the defense to call the witness for the sole purpose of corroborating the appellant's testimony but not to "create a straw man in this court and then proceed to tear that straw man apart." Bangura testified in broken English that he casually met the appellant at a cabaret in Frankfurt. Afterwards, appellant gave him a ride to his brother's home where he inadvertently left his bag and its contents in appellant's car. He never learned appellant's name and could not identify the car to reclaim the bag. He denied accompanying appellant to the Netherlands.

We do not find the judge's examination of appellant to have been excessively lengthy or suggestive of appellant's mendacity. To the contrary, it appears more representative of an attempt to reconcile the inconsistencies and clarify some of the factual ambiguity between the appellant's version of the events at trial and what he had allegedly told police officials at the time of his apprehension. Moreover, the judge's ruling to limit Mr. Bangura's testimony was a proper exercise of his discretion pursuant to Mil.R.Evid. 403 and 611. Finally, we do not find any impropriety in the judge's cross-examination of Mr. Bangura. His questions were well within the scope of direct examination and were designed to insure that the witness, whose English was marginal, meant what he said. In any event, Bangura's testimony was adverse to appellant. Hence, the judge's questions were not prejudicial and conceivably could have benefited the appellant had Bangura changed his story.

The findings of guilty and the sentence are affirmed.

Senior Judge DeFORD and Judge KANE concur.