**UNITED STATES, Appellee,**

v.

**Marvin L. CHERRY, Staff Sergeant,
U.S. Army, Appellant.**

No. 62,997.
CM 8800944.

U.S. Court of Military Appeals.

Argued Feb. 14, 1990.

Decided Aug. 27, 1990.

For Appellant: *Captain Michael J. Berrigan* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Jeffrey J. Fleming* (on brief); *Captain Jon W. Stentz* and *Captain Cynthia G. Wright.*

For Appellee: *Captain George R. Johnson* (argued), *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Martin D. Carpenter* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

During March and April 1988, appellant was tried by a special court-martial composed of officer and enlisted members at Frankfurt, Federal Republic of Germany. Contrary to his pleas, he was found guilty of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, forfeiture of $447.00 pay per month for 2 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated June 7, 1989.

This Court granted review of the following issue of law:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY PERMITTING HIS COMPANY COMMANDER TO TESTIFY IN AGGRAVATION BEFORE MEMBERS, OVER OBJECTION BY DEFENSE COUNSEL, THAT A NONCOMMISSIONED OFFICER CONVICTED OF WRONGFUL USE OF COCAINE HAS NO REHABILITATION POTENTIAL.

We hold that the military judge committed prejudicial error when he allowed the testimony of appellant's company commander to go before the members on sentencing. *See United States v. Antonitis*, 29 MJ 217 (CMA 1989); *United States v. Ohrt*, 28 MJ 301 (CMA 1989); *United States v. Horner*, 22 MJ 294 (CMA 1986).

Appellant pleaded not guilty to a single specification of using cocaine on January 11, 1988. The prosecution presented a case based on the results of urinalysis. Appellant denied knowingly using cocaine, although he admitted going to a civilian party during the time in question. Despite presentation of character witnesses by the defense and attacks on the urinalysis results, the members found appellant guilty.

On sentencing, the defense introduced evidence that appellant was a non-commissioned officer (E-6) with 10 years of prior military service. Three witnesses were called by the defense: Command Sergeant Major Weems, Staff Sergeant Cook, and Master Sergeant Bullock. All three witnesses praised appellant's above-average duty performance and opined that he had "rehabilitative potential." There was no evidence of prior disciplinary action presented by the Government.

The prosecution's sole evidence in aggravation was the testimony of appellant's company commander, Captain James Fitch, Jr. He testified as follows:

Q: Captain Fitch, what is your duty position with Headquarters Company [HHC]?

A: I am the company commander.

Q: How long have you been the company commander?

A: I took command on the 12th of February of this year.

Q: Do you know the defendant in this case?

A: I do.

Q: How well do you know him?

A: I worked with him a little bit before I took command at the change of command inventory, and I have worked with him on a fairly frequent basis since then since he is in my supply room.

Q: How many soldiers do you command, Captain Fitch?

A: Right now, today, it is about 550–560.

Q: All right, and in your opinion as the commander of 550 to 560 soldiers, what effect does drug use by your soldiers have on your unit?

CDC: Objection, relevance.

MJ: Overruled.

A: Drug abuse by soldiers of any rank is an impediment to mission performance. One is we don't know how to rely on the soldiers who may be taking drugs and two is we invest a great deal of chain of command time into ferreting out who is using drugs and then following up and actions to pun-

ish it. It indicates ah—drug use by NCOs is even worse because if there is a drug use by NCOs and it is known in the company—and NCOs are a key ingredient in the enforcement of standards and the maintenance of discipline, good order and morale, it is awfully hard to expect other NCOs and younger soldiers to adhere to the standards that are established if their leaders are not meeting those standards.

Q: Captain Fitch ...

CDC: Your Honor, may we request a side bar?

MJ: For what purpose?

CDC: To delineate the testimony from the accused [sic]. We do not believe that it will be relevant to the accused in this particular case. He is speaking in general terms, Your Honor, not particularly relevant to either HHC's experience or that of the accused.

MJ: All right, are you making an objection now to the relevancy of his testimony at this point?

CDC: Yes, I am, Your Honor.

MJ: Objection overruled. Please continue.

TC: Captain Fitch, in your opinion as the commander of 500 soldiers, does a noncommissioned officer who uses drugs have a place in your unit?

A: *No, and I don't feel that an NCO that uses drugs has a place anywhere in the Army.* In my unit it is particularly distracting to the mission's performance because the backbone of the company is the NCO Corps and that is probably true for all companies, but for here, with the staff officers who have the responsibilities for overseeing the entire division, the maintenance of order and discipline with the company itself is wholly dependent upon the NCOs and the NCO chain is the part that operates our company, perhaps to a greater degree than most line companies may need the NCOs. There is not the direct day to day overwatching [sic] of the officers for the basic soldierly things because those officers are

dual hatted with their staff responsibilities for the entire division as well as taking care of the soldiers in their section. So, an NCO who uses drugs in my company, I think it is even tougher to try to maintain good order and discipline in a company like mine than it is in a line company which I did command before.

TC: Thank you, Captain Fitch. I have no further questions, Your Honor.

CDC: Your Honor, we would request a 39—if we may proceed.

CROSS-EXAMINATION

Questions by the Civilian Defense Counsel:

Q: Is what you are saying, Captain Fitch, is it is your belief that any NCO that has used drugs has no rehabilitative ...

MJ: He didn't testify to that, counsel. I want you to get it right, now. He has testified that a noncommissioned officer who uses drugs has a detrimental impact to his unit and his mission. That is what he has testified to. There has been no testimony here concerning rehabilitation.

Q: *You have testified that you don't believe that an NCO that has used drugs can still remain an asset to your unit, is that correct?*

A: *That is correct.*

Q: Ah—do you know Staff Sergeant Cherry? You have observed his work performance for how long?

A: Since I began the inventory in late December. So, I have seen the first two months before taking command I dealt with him a couple of times a week at the most. Since taking command probably four or five times a week on the average.

Q: And has his duty performance been excellent during that time?

A: Excellent? No.

Q: Average? What you would expect from an NCO?

A: I would—ah what I would expect from an NCO, it has been average. I would not consider his duty perform-

ance to be the standard setter, but on the other hand, it has not been substandard either, his day to day accomplishment of the supply mission.

Q: *Is there any NCO that has taken cocaine that you believe can still be an asset to your unit or an asset to the Army?*

A: *If convicted of cocaine use?*

Q: Yes.

A: *No.* They are completely inconsistent. Being a soldier who is charged with enforcing standards and maintaining discipline and enforcing regulations and laws and then being convicted of something as serious as the abuse of illegal drugs, especially with the amount of effort that the Army goes into ensuring that soldiers are aware that the abuse of illegal drugs will not be tolerated, especially in the NCO ranks, I don't see how you can do both. I don't see how you could do that and also be an asset.

Q: So no matter how outstanding a soldier might be, you still believe that he can no longer—no matter how outstanding his performance of work was once before, you still don't believe that they can be an asset to the Army after a drug conviction?

A: That is correct. The net value of it is that whatever contribution that could be made, an NCO convicted of drug use, the net value is negative.

Q: Do you believe that they can be an asset as a lower enlisted, after drug conviction?

A: If they had once been an NCO?

Q: Yes.

A: No. Once you have pinned on the hard stripes that says that you are a noncommissioned officer in the United States Army, you just had to meet a new standard. If you get busted from that it is a different standard that applies I think. A first time drug use by a junior soldier, the Army tells us through its regulation, through AR

635–200, the Army tells us that we need to make sure that we consider that it may be adolescence, immaturity, those kinds of things, that have influenced him to have utilized or to have abused drugs. And, we have to make that consideration. But, a noncommissioned officer who has spent the time in the Army that is required to become a noncommissioned officer, has had the hard stripes pinned on and is now part of a special corps in the US Army. The standards are there and once violated for something as serious as that, *you cannot recover.*

Q: *Is it accurate to say that no matter what type of a soldier that Staff Sergeant Cherry was, that you would still not see him being an asset to the Army, after his conviction?*

A: *That is correct.*

CDC: No further questions, Your Honor. Request a 39(a) Session, Your Honor, under *US v. Horner.*

(Emphasis added.)

---

■■ As a prelude to resolving the granted issue, we note that appellate defense counsel relies on the decisions of this Court in *United States v. Ohrt* and *United States v. Horner,* both *supra,* as authority for his claim of legal error. Both these decisions interpret and apply RCM 1001(b)(5), Manual for Courts–Martial, United States, 1984.[1] The primary thrust of these decisions is that this Manual rule does not permit a commander to give an opinion on a servicemember's "potential for rehabilitation" if his opinion is based solely on his view of the severity of the offense. The proffered rationale for this holding was the Court's conclusion that the only opinion testimony permitted by this rule is that which is rationally based on an individual assessment of a servicemember's character and potential. *See United States v. Antonitis,* 29 MJ at 220. *See generally* Mil.R.Evid. 701, Manual, *supra.*

---

1. (5) *Evidence of rehabilitative potential.* The trial counsel may present, by testimony or oral deposition in accordance with R.C.M. 702(g)(1), evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation. On cross-examination, inquiry is allowable into relevant and specific instances of conduct.

A secondary thrust of these decisions concerns the scope of the opinion which a commander may present to the members for purposes of sentencing. These decisions suggest that RCM 1001(b)(5) does not authorize admission of a commander's opinion as to an appropriate punishment for the offenses for which a servicemember has been found guilty at a court-martial. The rationale for this conclusion was not particularly delineated in *United States v. Horner*, 22 MJ at 296. However, later in *United States v. Ohrt, supra*, this Court indicated that such an opinion invaded the province of the court-martial (28 MJ at 305) and constituted unlawful command influence (*see United States v. Sanford*, 29 MJ 413, 415 (CMA 1990); *see generally* Art. 37, UCMJ, 10 USC § 837).

A third aspect of these decisions is the euphemism rule which was announced in *United States v. Ohrt*, 28 MJ at 305. There, this Court indicated that a commander's opinion stopping short of expressly recommending a punitive discharge, but which impliedly advocated separation from the service, was also prohibited at courts-martial.

Turning to the present case, we first note that appellant's company commander did not testify that "a noncommissioned officer convicted of wrongful use of cocaine has no rehabilitation potential." He did state, however, that "I don't feel that an NCO that uses drugs has a place anywhere in the Army." On cross-examination, he also stated that he did not believe "any NCO that has taken cocaine.... can still be.... an asset to the Army." These comments clearly suggest that appellant be separated from the service and, as such, violate the euphemism rule of *Ohrt*. Accordingly, this particular part of the testi-

mony by the commander was not admissible at appellant's court-martial. *United States v. Ohrt, supra* at 305; *United States v. Horner*, 22 MJ at 296.

We further note that trial counsel also sought Captain Fitch's opinion on the effect of drug use by his soldiers on his unit. RCM 1001(b)(4).[2] His initial response was a general condemnation of drug users in the military and somewhat less sweeping condemnation of noncommissioned officers who commit this crime. Such a response, however, did not sufficiently focus on the impact of appellant's criminal conduct upon his unit's particular military mission. As such, it could readily be construed as the commander's opinion that appellant should not be retained anywhere in the service. Such a response was also found by this Court in *United States v. Antonitis, supra*, to be inadmissible under RCM 1001(b)(4).

 These errors by themselves do not warrant reversal of appellant's sentence. Prejudice is required. Art. 59(a), UCMJ, 10 USC § 859(a). *See United States v. Horner, supra* 22 MJ at 296. Here, the military judge belatedly recognized that problems existed in admission of Captain Fitch's testimony and gave certain instructions to the members. Thus, one of our concerns is with the sufficiency of the judge's instructions to cure any undue prejudice which might have resulted from the impermissible aspects of the commander's testimony. We must be confident that the instructions placed this commander's testimony in the proper perspective. *See United States v. Horner, supra* at 296. Where there is substantial doubt, we cannot affirm the sentence. *United States v. Ohrt, supra* 28 MJ at 307.

---

**2.** (4) *Evidence in aggravation.* The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty. Except in capital cases a written or oral deposition taken in accordance with R.C.M. 702 is admissible in aggravation.

*Discussion*

Evidence in aggravation may include evidence of financial, social, psychological, and

medical impact on or cost to any person or entity who was the victim of an offense committed by the accused and evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense. *See also* R.C.M. 1004 concerning aggravating circumstances in capital cases.

The military judge expressly informed defense counsel that this particular opinion testimony would not be considered by the members on the question of appellant's rehabilitative potential. He said:

I'll tell you what, Captain Fitch has testified and he has testified as to his personal opinion of the accused's duty performance and his personal opinion as to whether or not the offense committed by the accused has an impact on the unit *and he has testified that in his opinion any soldier who is convicted of illegal drug possession, particularly an NCO, could not be an asset to the Army. Now I am willing to give an instruction to the court members as to how they should view that testimony,* based upon any input that you may have, Mr. Sullivan [civilian counsel], and that is how I am going to rule upon your objection. All right, so at the conclusion of these proceedings, we will discuss that instruction. All right?

CDC: Thank you, Your Honor.

(Emphasis added.)

He later addressed this matter in an Article 39(a), UCMJ, 10 USC § 839(a), session on sentencing. He said:

I will give the standard prefatory sentencing instructions but this is what I intend to say about Captain Fitch's testimony and if you disagree, of course I invite you to add or except anything I say. *I am going to say that Captain Fitch's categorical testimony may be used to assess what he believes to be the impact of the accused's offense upon the unit,* but in no respect may [it] be used by the court members to determine whether or not Staff Sergeant Cherry has rehabilitative potential as that would be entirely inappropriate.

CDC: Defense concurs, Your Honor.

(Emphasis added.) Finally, he instructed the members as follows:

Now, against this background, you heard the testimony of Captain Fitch, the company commander of Headquarters and Headquarters Company, 3d Armored Division. Captain Fitch testified as to the impact of drug use upon his unit, the impact of drug use by a noncommissioned officer upon his unit *and to certain categorical beliefs he had [with] respect to both of those activities. You may use Captain Fitch's testimony to assess the impact of Sergeant Cherry's offense upon the unit, but I am now instructing you that you may not consider Captain Fitch's testimony in any way, shape or form as to Sergeant Cherry's rehabilitative potential.* Do all of the members of the court understand that? (Affirmative response.)

(Emphasis added.)

In evaluating the prejudice to appellant from admission of Captain Fitch's testimony in this case, several factors deserve consideration. First, appellant had a 10-year record of unblemished military service. Second, he was found guilty of a single drug-use offense. Third, three experienced noncommissioned officers testified as to his good rehabilitative potential. Fourth, the challenged opinion testimony of Captain Fitch, the only aggravation evidence by the prosecution, should not have been admitted at all at appellant's court-martial. Fifth, the purported limiting instructions did not provide for striking the challenged opinion evidence, as originally requested by the defense, or warning the members to totally disregard it. In these circumstances, prejudice is obvious. *Cf. United States v. Antonitis,* 29 MJ at 220; *United States v. Ohrt,* 28 MJ at 307.

The decision of the United States Army Court of Military Review is reversed as to sentence. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence may be ordered.

Chief Judge EVERETT and Judge COX concur.