**UNITED STATES**

v.

**Staff Sergeant Anthony E. PRIVETTE, FR 217–78–3779, United States Air Force.**

**ACM S28321.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 1 May 1990.

Decided 4 Oct. 1990.

**792**

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel Joe R. Lamport and Major Paul H. Blackwell, Jr.

Before MURDOCK, KASTL and MILLS, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

Based upon *United States v. Partyka*, 30 M.J. 242 (C.M.A.1990), we hold today that the prosecution introduced improper matters in rebuttal during a sentencing proceeding. We find error and reassess.

### I

Staff Sergeant Privette was convicted in accordance with his pleas of wrongful use of marijuana, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. His sentence is a bad conduct discharge, confinement for four months, and reduction to airman.

He now argues that the military judge erred when he permitted trial counsel to bootleg improper rebuttal into a presentencing proceeding, over defense objection.

During presentencing, Privette made an unsworn statement. He expressed chagrin at the damage his drug abuse had caused his family and squadron; he also expressed remorse over his alcohol problem. He continued:

> I am presently attending three [Alcoholics Anonymous] meetings a week. *I will never use marijuana again as long as I live.* I urge you to give me the chance to work out my alcohol problem and to support my family. I urge you not to make it impossible to receive Veteran's Administration alcohol counseling. Please do not label my entire eight year career with a bad conduct label. Thank you.

(Emphasis added).

In rebuttal, the prosecution then called Captain P, Chief of Social Actions, to challenge Privette's statement that he would not use marijuana again. The judge overruled defense objections, and Captain P was accepted as an expert in assessing rehabilitation potential of substance abusers. The following colloquy then occurred:

> TC: Captain [P], in your expert opinion—what is your expert opinion as to the accused's potential to rehabilitate himself and stay off of marijuana?
>
> Wit: Poor.

We hold that the military judge erred in permitting such testimony. R.C.M. 1001(c)(2)(C) explains that the prosecution may rebut any statements of *facts* in an unsworn statement. Here, simply stated, we see no statement of "facts" to rebut. *See Partyka*, 30 M.J. at 246–247; *United States v. Cleveland*, 29 M.J. 361 (C.M.A. 1990).

Privette's vow to avoid drugs in the future was a simple assertion in the nature of: "I'm sorry; I promise I won't do it again." What was there to rebut in this declaration? Consider a penitent who confesses to a priest and pledges to lead a new life. One would reject as clairvoyance any

authoritative assertion that the penitent would return to the confessional next week burdened with the same "sin." So too, we regard as pure prophecy—and hardly helpful to the triers of fact—Captain P's opinion that the appellant would not keep his anti-drug pledge.

The Court of Military Appeals laid to rest in *Partyka* much of the possible confusion in this area. However, *Partyka* does not overturn a venerable line of precedent * illustrating that the prosecution need not suffer an accused who seeks to gull the trier of fact with misinformation, either directly or by implication.

■ Trial practitioners may find difficulty in defining the precise point at which an accused steps over the line drawn in *Partyka,* thereby allowing government rebuttal. We think *United States v. Britt,* 16 M.J. 971 (A.F.C.M.R.1983), helpful in resolving the question of when the door will open to legitimate rebuttal. We cautioned there that the accused cannot be heard to complain when he "introduces Dr. Jekyll and the prosecution, offering a more complete portrait, presents Mr. Hyde." *Britt,* 16 M.J. at 973. In short, the test is: *Has the accused sought to hoodwink the sentencing body with a false picture?*

■ Here, Privette never sought to capitalize on false inferences. Therefore, cases cited by the government in support of admission are distinguishable. In *United States v. Gunter,* 29 M.J. 140 (C.M.A.1989), the appellant presented himself as a likely rehabilitation candidate. In *United States v. Evans,* 20 M.J. 504 (A.F.C.M.R.1985), *aff'd.,* 22 M.J. 192 (C.M.A.1986), a similar contention was advanced. Both *Gunter* and *Evans* involve rebuttal to factual assertions by an accused and his witnesses. That is not the case here. *See Partyka,* at 246–247.

Our reading of the record convinces us that the defense objections were adequate to avoid waiver. Concededly, the defense comments are less than crystal-clear. On balance, we read the defense position as this: "It would be all right for the prosecutor to offer legitimate rebuttal about Sergeant Privette's drug use—but no such data is being proffered. There's a big distinction between solid, tangible evidence and bringing in a Social Actions officer to give his general gut feeling about poor rehabilitation prognosis. The 'expert' isn't relying on anything specific but simply on abstract ideas."

We find error and will reassess the sentence.

## II

■ Independently reviewing the record, we note another matter of concern based upon *United States v. Antonitis,* 29 M.J. 217 (C.M.A.1989). In the present case, the prosecution placed before the members, over objection, the fact that the appellant had lost his Personal Reliability Program (PRP) status. Since he was an aircraft mechanic, loss of PRP meant he could not work on certain planes. In *Antonitis,* the Court held that: (1) the decision to award a punitive discharge should not be influenced by whether the accused retained a security clearance; and (2) the sentencing authority could properly be concerned over an accused who was entrusted with a security clearance *and abused that trust and confidence.*

We consider *Antonitis* persuasive. There was no indication the appellant's crime in any way affected his duty, and therefore PRP status was irrelevant. Loss of PRP status was not developed during closing sentencing argument; however, we have serious doubts as to the propriety of

---

* *See United States v. Strong,* 17 M.J. 263 (C.M.A. 1984) (claim of unblemished prior record rebutted); *United States v. Konarski,* 8 M.J. 146 (C.M. A.1979) (good duty at the Disciplinary Barracks countered by testimony that this appellant might not do well in a less-structured environment); *United States v. Hanks,* 29 M.J. 907 (A.C. M.R.1989) (alcoholic's potential for rehabilitation weakened by fact that he had recently lapsed; good review of earlier precedents); *United States v. Jeffries,* 47 C.M.R. 699 (A.F.C.M. R.1973) ("I've been trying" countered by evidence of lateness to work and failure to meet physical appearance standards); *United States v. Oenning,* 20 M.J. 935 (N.M.C.M.R.1985) ("good record" countered by proof of nonjudicial punishment).

the information reaching the finders of fact in any fashion. *See generally United States v. Thomaselli*, 14 M.J. 726, 728 (A.F. C.M.R.1982); *United States v. Lewis*, 7 M.J. 958 (A.F.C.M.R.1979). We consider this error and will take the matter into account in our decretal paragraph.

## III

 The appellant also invites our attention to the fact that the president of the court-martial may have unilaterally decided upon a sentence of four *months* confinement when the members actually voted for four *days* confinement. The president had announced that the court-martial had determined a sentence. When the military judge inspected the members' sentencing worksheet, he handed it back, noting that neither the word "day" nor "month" had been deleted from the confinement portion of the form. The president immediately agreed that he had meant to delete one word. He made the correction in open court; it was reviewed by all members.

We find no error. There is no merit in the appellant's contention that an improper public deliberation of sentence occurred here. As the Government appellate brief suggests, it is inconceivable that court members would allow their president to change a sentence by purposely amending the worksheet in their presence and then brazenly misannouncing their true intent.

## IV

 We now consider sentence appropriateness. We believe our experience sufficient to determine the matter at this level. *United States v. Peoples*, 29 M.J. 426 (C.M. A.1990); *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). We have every confidence that a career non-commissioned officer's use of marijuana (on two occasions) would inevitably have called forth a bad conduct discharge. As for the remainder of the sentence, and considering that Privette has served almost all of his confinement time, we will grant some indirect amelioration as to pay. We approve a sentence of a bad conduct discharge, confine-

ment for four months, and reduction to pay grade E–3 (airman first class).

The findings of guilty and the sentence, as modified, are correct in law and fact and, upon the basis of the entire record, are

AFFIRMED.

Senior Judge MURDOCK and Judge MILLS concur.