**UNITED STATES, Appellee,**

v.

**Sergeant James J. KRZCUIK, Jr., 568–27–4114, United States Army, Appellant.**

**ACMR 9101438.**

U.S. Army Court of Military Review.

31 March 1992.

As Corrected 15 April 1992.

For Appellant: Captain Robin N. Swope, JAGC, Captain Paul H. Turney, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Captain Glenn L. Kirschner, JAGC (on brief).

Before De GIULIO, HAESSIG and ARKOW, Appellate Military Judges.

## OPINION OF THE COURT

ARKOW, Judge:

Appellant, pursuant to his pleas, was convicted by a military judge sitting as a general court-martial of conspiracy to commit larceny, larceny (two specifications), and false swearing, in violation of Articles 81, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, and 934 (1982) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for nine months, total forfeitures, and reduction to Private E1. The convening authority reduced the confinement to seven months but otherwise approved the adjudged sentence.

Appellant contends that trial counsel improperly elicited from a defense witness that appellant's security clearance was revoked as a result of committing these offenses and therefore he could no longer perform in his current duty position. He also claims trial counsel improperly argued on sentencing that appellant can no longer do his job because he lost his security clearance. We find these claims to be without merit.

A defense witness, appellant's First Sergeant, testified that he believed appellant had outstanding military character, always gave an "110%" effort, and

*"continued to do his job."* He concluded that appellant had rehabilitative potential. On cross-examination, trial counsel asked the witness to explain appellant's duties. In response, the witness indicated appellant was required to handle classified documents and, as a result of this incident, lost his security clearance so *he could not continue to do the job for which he was trained.* In spite of this impediment, the witness adhered to his opinion that appellant could work for him again.

The cross-examination never broached the subject of whether appellant should be discharged from the service. It only served to show appellant could not perform in his current duty position. This was appropriate cross-examination as it focused on the impact appellant's conduct had on his ability to do his job and gave the military judge "some insight into the impact of the offenses on the unit's mission" under Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1001(b)(4) [hereinafter R.C.M.]. *United States v. Thornton,* 32 M.J. 112, 113 (C.M.A.1991).

Appellant relies upon *United States v. Antonitis,* 29 M.J. 217 (C.M.A.1989), to support his claim. In *Antonitis,* trial counsel introduced, over defense objection, evidence in aggravation concerning the impact of the loss of a security clearance pursuant to R.C.M. 1001(b)(4) and 1001(b)(5).[1] The questioning in *Antonitis* was directed at establishing whether Antonitis could continue her job without a security clearance *and* whether she could remain in the service without her clearance. As noted by the Court of Military Appeals, the "focus of the testimony was to demonstrate that appellant should not be retained in the service, rather than to show the impact her criminal conduct had upon the mission." *Id.* at 220. The Court concluded that it was improper to use evidence of a revoca-

tion of a security clearance to support an argument for a punitive discharge.

Here, unlike *Antonitis,* the consequences of the loss of a security clearance were raised, without objection, on the cross-examination of a defense witness, not as government evidence in aggravation. Therefore, R.C.M. 1001(b)(4) should not apply.[2] We must, however, examine whether the cross-examination was properly limited to the subject matter of the direct examination. *See* Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 611(b) [hereinafter Mil.R.Evid.]. It is clear from the testimony that trial counsel's cross-examination properly clarified the direct examination of the defense witness.

Even if we were to conclude that the cross-examination exceeded the scope of the direct examination, defense counsel's failure to object amounted to waiver of any error. *See* Mil.R.Evid. 103.

▮ Appellant's contention that trial counsel's argument on sentence was improper is also without merit. The trial counsel argued:

The government asks you to consider that he just threw away, by going out and committing these crimes, he threw away a lot of money, a lot of time, a lot of resources that went into training him. He no longer can do the job that he's been trained for. He lost his security clearance. You heard the First Sergeant testify to that. You heard him say on the stand that he won't get his security clearance back. He can't do the job the Army trained him for. He discredited the Army by going out and stealing and lying. And why did he do it? He did it for himself. He didn't consider the Army. He went out for greed, himself, to do things for "me."

The argument related the loss of the security clearance which was properly in evi-

---

1. R.C.M. 1001(b)(4) provides, in relevant part, "The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." R.C.M. 1001(b)(5) provides "The trial counsel may present ... evidence, in the form of opinions concerning the accused's previous performance

as a servicemember and potential for rehabilitation."

2. In *Thornton,* the Court of Military Appeals held that similar evidence could be presented by the government as aggravation evidence pursuant to R.C.M. 1001(b)(4). 32 M.J. at 113.

dence and, when taken in context, merely set forth the premise that appellant could not do the job for which the Army trained him. It did not equate loss of a security clearance with the need for a punitive discharge. This was fair comment on the evidence and was not used to support a request for a punitive discharge. *See Thornton*, 32 M.J. at 113.

In any event, defense counsel's failure to object constitutes waiver. *See* R.C.M. 1001(g). Even if the argument were considered improper, in the absence of a clear showing to the contrary, we can presume that the judge, who was "sitting alone," appropriately distinguished between proper and improper argument and considered only that which was proper. *See United States v. Montgomery*, 42 C.M.R. 227 (C.M.A.1970).

We have also considered the errors personally asserted by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge De GIULIO and Judge HAESSIG concur.