254

UNITED STATES, Appellee,

v.

Jennifer A. TAYLOR, Specialist
U.S. Army, Appellant.

No. 68,384.
CMR No. 9101565.

U.S. Court of Military Appeals.

Submitted April 5, 1993.

Decided Sept. 28, 1993.

For Appellant: *Lieutenant Colonel James H. Weise, Captain Robert Lane Carey, Captain Paul H. Turney* (on brief); *Captain Kurt J. Mayer* and *Captain Robin N. Swope,.*

For Appellee: *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg, Major Timothy W. Lucas, Captain Sheila E. McDonald* (on brief).

*PER CURIAM:*

In June and July of 1991 appellant was tried by a military judge sitting alone as a special court-martial at Fort Campbell, Kentucky. In accordance with her pleas, she was convicted of three specifications of failure to repair, two specifications of wrongful use of cocaine, and one of breaking restriction, in violation of Articles 86, 112a, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 912a, and 934, respectively. She was sentenced to a bad-conduct discharge, confinement for 75 days, forfeiture of $500.00 pay per month for 2 months, and reduction to Private E-1. The convening authority approved the sentence. The Court of Military Review, finding no errors to the material prejudice of appellant, affirmed the findings and sentence in a unpublished opinion dated July 13, 1992. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

We granted appellant's petition for review on the following question of law: [1]

---

1. We also granted review of the issue regarding the Appointments Clause which our decision in

*United States v. Weiss,* 36 MJ 224 (CMA 1993),

WHETHER TRIAL DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN THE PRESENTENCING HEARING THEREBY CAUSING SUBSTANTIAL PREJUDICE TO APPELLANT.

■ Appellant contends that her trial defense counsel was deficient in two respects during the presentencing hearing. First, counsel failed to object when government counsel elicited opinion testimony from a government witness to the effect that appellant had no rehabilitative potential for future service in the Army. Final Brief at 5–6. Second, trial defense counsel himself introduced evidence from appellant's company commander, which included the statement that appellant "should no longer remain in the service because of her 'drug-related difficulties.'" Final Brief at 7. Appellant notes that government counsel, in closing argument, referred to "the statement submitted as evidence by the defense" as partial support for his contention that a punitive discharge was appropriate. Final Brief at 8.

The record of trial confirms that, during the sentencing phase of the court-martial, the Government called appellant's platoon sergeant, Sergeant First Class Wilbert W. Hill, as its sole witness. SFC Hill had been appellant's platoon sergeant for about 9 months at the time of his testimony, including the period of the platoon's deployment to Saudi Arabia. He described appellant as a

> below average type soldier, because I've had some problems with her there [Saudi Arabia]; feedback from her squad leader, counseling statements, disrespect to a noncommission officer and FTR's [failures to repair], this type of thing. And some of these was verbal and some has been documented on counseling forms, sir.

The military judge spontaneously announced that he would "disregard" those remarks relating to specific acts of misconduct.

*aff'd,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1

On redirect examination, without defense objection, trial counsel asked SFC Hill:

> Sergeant Hill, based on your personal knowledge of her and the reports you have received from others, do you believe this soldier has rehabilitative potential for service in the Army?

SFC Hill's response was, "No, sir, I don't."

The Government rested after SFC Hill's testimony, and appellant, with the assistance of her counsel, made an unsworn statement in which she cited her 5 years of good service to the Army prior to her deterioration due to drug addiction. Trial defense counsel also introduced a written statement from Captain Lawrence P. Phelps, appellant's company commander. The substance of CPT Phelps' statement is contained in these two paragraphs:

> 2. I have commanded this unit since October of 1989. During this entire period, with the exception of the drug-related problems occurring since redeployment from Operation Desert Storm, I have found Taylor to be a solid performer in the unit. She is Air Assault qualified, and was on the promotion list prior to her recent difficulties. She deployed with the company and helped support the 18th Airborne Corps with General Supply Support during both Desert Shield and Desert Storm.

> 3. Although SPC Taylor was never a problem-soldier for the command prior to the advent of her drug-related difficulties, these difficulties have significantly damaged her performance, reputation, and good standing in the unit. I feel it would be impossible for Taylor to overcome these problems to the extent that she could possibly remain in the military service.

In his argument on sentencing, trial defense counsel stressed appellant's excellent record prior to her recent involvement with drugs. He urged the military judge not to impose a punitive discharge but to give appellant a chance to rehabilitate herself.

(1994), resolved against appellant.

After the court-martial was concluded, trial defense counsel petitioned the convening authority for clemency pursuant to RCM 1105, Manual for Courts–Martial, United States, 1984. Again, counsel stressed appellant's years of commendable service, including the fact that she was on the promotion list for sergeant at the time her life began to unravel. Counsel attributed her involvement with drugs to "her post-war emotional letdown." In requesting that the convening authority suspend the bad-conduct discharge, counsel noted appellant's progress in a drug treatment program, and he cited her gratitude for being "confined, because it has given her an opportunity to get away from drugs." Counsel concluded by urging a 6–month suspension of the punitive discharge "to allow [appellant] the chance to prove that she can be a good soldier once again."

The attack on trial defense counsel's representation first arose before the Court of Military Review. In response thereto, the Government procured trial defense counsel's affidavit explaining his trial tactics, to wit:

> I used CPT Phelps' statement for the following reasons. SPC Taylor was involved in another drug-related incident after the ones charged against her. The government was considering withdrawing the charges from the special court, adding the additional charge, and referring it to a general court-martial. I convinced the trial counsel, CPT Daniels, to not do this and instead go to court quickly with the charges he had. I interviewed the witnesses she gave me. None of them said really good things about her. Her best witness had been SGT Owens, her squad leader. Once he found out about this subsequent drug-related incident, he felt she did not have rehabilitative potential. CPT Phelps told me that he thought she was a good soldier until she got involved with drugs, but that she no longer had rehabilitative potential. I asked him to write me a

statement regarding her pre-drug job performance. He agreed, but showed up to court with the statement that included his opinion as to her rehabilitative potential. *Since this opinion was clearly based only on what she pled guilty to, I knew the judge would not consider it.* Therefore, I decided to use his statement.

> His statement fit neatly into my theory of the case. I argued that SPC Taylor was a good soldier until she became involved with drugs after the Persian Gulf war. I argued that she could be rehabilitated during confinement and could continue to soldier after she was released. If she got rid of the drugs, she would cease to be a problem. The confinement facility was the best place for her to get treatment for her problem. CPT Phelps' statement fit right into my theory, even though it contained his opinion.

(Emphasis added.)

The Court of Military Review concluded that trial defense counsel's "failure to ask the military judge to disregard the inadmissible material in the commander's statement was a mistake." Nevertheless, that court concluded that appellant failed to satisfy the second prong—the prejudice prong—of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)[2]; *see United States v. Scott*, 24 MJ 186 (CMA 1987). Therefore, the Court of Military Review held:

> Even if the defense counsel's performance arguably fell below 'an objective standard of reasonableness,' the appellant has failed to demonstrate a 'reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.' [*Strickland v. Washington*, 466 U.S.] at 694, 104 S.Ct. at 2068.

Unpub. op. at 3. We agree.

█ In *United States v. Scott*, 24 MJ at 188, we adopted the Supreme Court's test for ineffective assistance of counsel. An appellant must establish, first, that counsel was seriously deficient in some manner,

---

2. We need not decide at this time the application of *Lockhart v. Fretwell*, —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), to the military.

and second, that there is a reasonable probability that, but for this deficiency, the result of the proceeding would have been different. *Strickland v. Washington, supra* at 687, 104 S.Ct. at 2064.

*United States v. Bono,* 26 MJ 240, 242 (CMA 1988), was an application of the right to effective assistance of counsel at a presentencing hearing. In that case, defense counsel, by failing to object to uncharged-misconduct evidence and by offering adverse expert-opinion evidence, deprived appellant of the Sixth Amendment right to counsel. The prejudice prong of *Strickland* was demonstrated by credible indication that the military judge more than doubled the punishment he would have imposed but for counsel's ineffectiveness. 26 MJ at 241.[3]

Appellant's case contains no hint of prejudice similar to *Bono.* Indeed, the sentence imposed by the military judge was well within the sentence limitation of the court-martial and well within the limitation of the pretrial agreement negotiated by appellant. Further, while we absolutely agree with the Court of Military Review that trial defense counsel should have sought the military judge's explicit acknowledgment that

he was not considering the negative rehabilitation comments of SFC Hill and CPT Phelps, we note that a plethora of on-point opinions by this Court had been published at the time of appellant's court-martial and that the military judge was an experienced and senior military judge. *See United States v. Aurich,* 31 MJ 95 (CMA 1990); *United States v. Cherry,* 31 MJ 1 (CMA 1990); *United States v. Antonitis,* 29 MJ 217 (CMA 1989); *United States v. Ohrt,* 28 MJ 301 (CMA 1989); *United States v. Horner,* 22 MJ 294, 296 (CMA 1986). Even though trial defense counsel might have tied up this loop better, his confidence that the military judge (before whom he usually practiced) was thoroughly familiar with this aspect of our jurisprudence and would apply the law need not be dismissed out of hand.

Under the circumstances herein, we perceive no material prejudice to appellant's sentence. Art. 59(a), UCMJ, 10 USC § 859(a); *see generally United States v. DiCupe,* 21 MJ 440 (CMA), *cert. denied,* 479 U.S. 826, 107 S.Ct. 101, 93 L.Ed.2d 52 (1986).

The decision of the United States Army Court of Military Review is affirmed.

---

**3.** The convening authority, however, on advice of the staff judge advocate, took the appropriate corrective action and reduced the sentence, rendering further remedial action unnecessary. 26 MJ 240, 242–43 (CMA 1988).